J-S27028-18

2018 PA Super 177

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAYYIB THORNE | : | No. 2877 EDA 2017 |

Appeal from the Order August 9, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004855-2017

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

OPINION BY LAZARUS, J.:                                    **FILED JUNE 22, 2018**

The Commonwealth of Pennsylvania (Commonwealth) appeals from the order,[1] entered in the Court of Common Pleas of Philadelphia County, granting Tayyib Thorne's pre-trial motion to suppress money and a gun recovered from an allegedly unlawful search of the center console of the car in which Thorne was a front-seat passenger.  After careful review, we reverse and remand.

On the evening of April 29, 2017, Officer Johnathan Sweeney, a two-year veteran of the 17th District of the Philadelphia Police Department, was on routine patrol in his marked vehicle in the area of 26th and Tasker Streets.  He was patrolling the area due to high crime, drug activity and recent gun violence.  Sweeney had made 8-10 arrests in that area in the past two years;

---

[1] The Commonwealth has certified that the order will terminate or substantially handicap the prosecution.  **See** Commonwealth's Brief, at v; **see also** Pa.R.A.P. 311(d).

the arrests involved narcotics, aggravated assaults by handguns, probation violations and thefts.[2]  At approximately 9:15 p.m., Officer Sweeney observed a vehicle disregard a stop sign, then turn left onto 27th Street.   Officer Sweeney activated his lights and sirens and initiated a vehicle stop.  Thorne was located in the front-passenger seat of the vehicle.  After Officer Sweeney's partner had a conversation with the driver of the car, both officers returned to the patrol vehicle and ran the occupants' identification through the mobile data system.  In the midst of running the occupants' identification, Officer Sweeney testified that "[he] observed the defendant in the passenger seat dip down like [sic] towards the floor as well as leaning towards the console."[3]  N.T. Suppression Hearing, 8/9/17, at 9.  The database searches did not uncover any outstanding warrants or other legal issues; however, they did identify the driver of the vehicle as a known gang member.  *Id.* at 21, 23.

At that point, the officers returned to the car and asked the driver and Thorne to exit the vehicle so they could frisk them for weapons.  *Id.* at 10, 25.  When Officer Sweeney asked Thorne to exit the vehicle, he refused.  *Id.* at 12.  Officer Sweeney noticed that the occupants seemed nervous and that their voices were quivering.  *Id.* at 25.  At that point, Officer Sweeney opened the passenger-side door of the vehicle and tried to use control holds to pull

_____

[2] Officer Sweeney testified that he believed a shooting had occurred in that area three days prior to the instant incident.  N.T. Suppression Hearing, 8/9/17, at 12.

[3] Officer Sweeney did not see Thorne's hands at any point during the time he saw him dipping to his left toward the floor and console.  N.T. Suppression Hearing, 8/9/17, at 25.

Thorne out of the car. ***Id.*** At that point the officer saw Thorne "lunge toward the center console." ***Id.*** Back-up officers arrived and helped Officer Sweeney remove Thorne from the vehicle. ***Id.*** at 13. Once Thorne was removed from the car, Office Sweeney conducted a sweep of the car's passenger area, including the center console. ***Id.*** A black, loaded Smith and Wesson handgun and cash were recovered from the console. ***Id.*** at 14-15.

Thorne was charged with one count each of firearms not to be carried without a license,[4] carrying firearms in public in Philadelphia,[5] and resisting arrest.[6] On June 22, 2017, Thorne filed a pre-trial motion to suppress the evidence (gun and money) uncovered from the stop and search. After a hearing, the trial court granted the motion. The Commonwealth filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth presents the following issue for our consideration:

> Did the suppression court err in ruling that experienced officers lacked reasonable suspicion to conduct a protective search of the center console of a car driven by a known gang member and in which defendant was the front-seat passenger where, upon stopping the car for a vehicle code violation at night in a high crime area in which gang shootings had recently taken place, defendant refused to exit the car and instead lunged toward the center console?

---

[4] 18 Pa.C.S. § 6106(a)(1).

[5] 18 Pa.C.S. § 6108.

[6] 18 Pa.C.S. § 5104.

When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review: we consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *See Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008).

Instantly, the trial judge stated his reasons for granting suppression on the record:

> I think the pivotal moment in this case is the discovery back in the radio patrol car that the driver of the car was listed as a known gang member from that area. The officer, although he didn't initially recognize him, is aware of the person. I think that changed everything in the officer's mind as to how they would proceed. In my mind it does not convert what they already knew into the type of probable cause that allowed this subsequent police activity. Personally, I think it was prudent police activity, but I think it's suppressible activity. I grant the motion.

N.T. Suppression Hearing, 8/9/17, at 27-28. Moreover, in his Rule 1925(a) opinion, the trial court finds that *Commonwealth v. Reppert*, 814 A.2d 1196 (Pa. Super. 2002), is directly on point if we were to "[p]ut Reppert in the front passenger seat [like the defendant in this case]." Trial Court Opinion, 12/5/17, at 14. In *Reppert*, as the officers were following the subject vehicle and in the process of executing a traffic stop, one officer observed the defendant move his head and shoulders as if he were stuffing something into his pockets or between the seat cushions. The officer also testified that the defendant appeared "antsy and very, very nervous" as he sat in the back seat after the car was stopped and the other officer was questioning the driver

about his expired inspection and registration stickers. *Id.* at 1199. The officer ordered the defendant to get out of the car, saw bulges in his front pants' pockets and ordered him to empty his pockets. Although Reppert did not comply the first time he was asked, he ultimately emptied his pockets, which contained cash, marijuana and drug paraphernalia. Reppert filed an unsuccessful suppression motion in the trial court and he was convicted and sentenced. *Id.* at 1200. On appeal, our Court reversed the denial of suppression, finding that "the prior traffic stop . . . gave way to a new interaction when [the officer] directed Reppert to exit [the] car." *Id.* at 1202. Our Court concluded that once the driver was questioned and the officer accepted his explanation for the expired stickers, the traffic stop had concluded and there was no further reason to detain the driver or its occupants. *Id.* at 1203. Moreover, the Court reasoned that the officer's direction to Reppert to exit the vehicle was "unrelated to any traffic infraction and was not a necessary element of the prior traffic stop." *Id.* We find the facts and circumstances surrounding the vehicle stop in the instant case distinguishable from those in *Reppert*.[7]

_____

[7] We also note that in *Commonwealth v. Buchert*, 68 A.3d 911, 915 (Pa. Super. 2013), our Court acknowledged that "the issue in *Reppert* was whether a second interaction with the motorist occurred after the initial traffic stop, not whether furtive movements and nervousness led to reasonable suspicion in the first instance." *See also Commonwealth v. Simmons*, 17 A.3d 399, 405 (Pa. Super. 2011) (noting that in *Reppert*, court's holding stood for proposition that *pre-stop* furtive movements by themselves may not justify investigative detention after conclusion of valid traffic stop).

First, we note that here the officers had probable cause to stop Thorne's vehicle when they saw the driver disregard a stop sign. ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (officer has authority to stop vehicle for violation of Motor Vehicle Code where alleged violation did not require further investigation; traffic stop must be supported by probable cause). When the officers were running the registration information in the police database, Officer Sweeney testified that he saw Thorne's body dip down in the passenger seat toward the floor and lean toward the console. In his experience as a police officer, Officer Sweeney testified that guns are often stored in the center console of cars. N.T. Suppression Hearing, 8/9/17, at 20. He also testified that several incidents of gun violence recently had occurred in that area. ***Id.*** at 10-11. Based upon these facts, Officer Sweeney suspected that there was a weapon inside the vehicle, ***id.*** at 10, and, as a result, he and his partner asked the occupants to exit the vehicle. ***Id.*** This, too, is legally permissible.[8] ***See Pennsylvania v. Mimms***, 434 U.S. 106 (1977) (police officer can, to protect own safety, order occupants to alight from vehicle that has been stopped for routine traffic offense). When Thorne failed to comply with the officer's request to exit the vehicle, the officer forcibly tried to remove Thorne from the car. At that point, Thorne "lunged toward

---

[8] This is to be distinguished from a case where furtive movements or excessive nervousness is the sole basis for conducting an investigatory detention or where those movements are observed ***pre-stop***. ***Commonwealth v. DeWitt***, 608 A.2d 1030 (Pa. 1992); ***Reppert***, ***supra***; ***Cartagena***, ***infra*** (where officer testified he only conducted protective vehicle search based upon defendant's nervousness).

the center console." *Id.* at 12. When Thorne was finally removed from the vehicle, Office Sweeney conducted a search of the passenger compartment of the car, including the center console, where the suppressed evidence was found.

In ***Michigan v. Long***, 463 U.S. 1032 (1983), the United States Supreme Court set forth the principles applicable to a search of a passenger compartment of a vehicle for weapons:

> Our past cases indicate . . . that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that **the search of the passenger compartment of an automobile, *limited to those areas in which a weapon may be placed or hidden*,**[9] **is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons**. ***See Terry***[ ***v. Ohio***], 392 U.S.[1,] 21 [1968.] "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27[.] If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

***Long***, 463 U.S. at 1049-50 (footnote omitted) (emphasis added).

Here, the factors entering into Officer Sweeney's search of the car's center console were: (1) the legality of the initial stop of the car for a motor vehicle infraction; (2) the stop occurred late at night in a high-crime, drug

---

[9] Those areas include a center console, as in the instant case.

area; (3) recent gun violence in that area; (4) Thorne's furtive movements toward the floor and center console; (5) Thorne's nervousness and quivering voice; (6) Thorne's refusal to exit the car when asked by officer; and (7) Thorne lunging toward the center console when officer tried to forcibly remove him from vehicle. Under a totality of the circumstances, we believe that Officer Sweeney had a reasonable belief, based on articulable actions taken by Thorne, that his safety was compromised. *See Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994) (under circumstances encountered by officer, "a reasonably prudent man would have believed his safety was compromised" where defendant leaned briefly to right and towards floor near center of car, reached quickly between legs when ordered to place hands on steering wheel and officer discovered metal pipe wedged between driver's seat and door).

Most instructive to the case at bar is the following analysis from our full Court in *Commonwealth v. Cartagena*, 63 A.3d 294 (Pa. Super. 2013) (en banc), which noted:

> Absent some combination of evidence to give context to the encounter – for example, testimony that the stop occurred in a high-crime area; testimony regarding [the arresting] officer's training and experience and its role in formulating a reasonable suspicion that Cartagena was armed and dangerous; and/or testimony illuminating the length of delay in Cartagena lowering his windows – we cannot overturn the suppression court's decision to suppress the gun found during the search of the passenger compartment of the vehicle.

*Id.* at 306. Here, we have exactly the facts that our Court mentioned were missing from the evidence in *Cartagena*.

First, Thorne's presence in a high-crime area, where there had been three recent episodes of gun violence, is a factor supporting a determination that reasonable suspicion exists. *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super. 2009). Next, Thorne's "dipping" movements toward the floor and center console of the car, refusal to exit the car when asked by Officer Sweeney, and his lunging toward the center console when the officer was trying to remove him from the vehicle were acts consistent with an attempt to conceal or reach for a weapon. *See In Interest of O.J.*, 958 A.2d 561 (Pa. Super. 2008) (en banc) (police had reasonable suspicion to conduct protective weapons search of console of vehicle where individual made several hand movements over car's center console and officer believed weapon may have been secreted in console); *Commonwealth v. Tuggles*, 58 A.3d 840 (Pa. Super. 2012) (even one motion by person indicative of attempt to secret weapon can support belief that person has gun and justifies search of center console based on fear weapon night be located there). Additionally, Officer Sweeney's law enforcement experience and personal knowledge of recent gun violence in the area supported his belief that there may have been a gun in the car; it was more than just a "hunch" as the trial court opined. *See* Trial Court Opinion, 12/5/17, at 10. Moreover, the officer's observation of Thorne's nervousness and quivering voice were additional factors justifying Officer Sweeney's reasonable suspicion. *Buchert*, *supra*. Finally, the fact that the driver of the vehicle was a known gang member, while not determinative, is certainly a factor to be considered in assessing the reasonableness of Officer

Sweeney's actions. *See Commonwealth v. Carter*, 779 A.2d 591 (Pa. Super. 2001) (under some circumstances, officer's concern for his safety could be justified based on a defendant's reputation as member of a violent gang); *see also United States v. Garcia*, 459 F.3d 1059, 1066 (10th Cir. 2006) (gang connections are factor in determining reasonableness of officer's actions).

Accordingly, we conclude that Officer Sweeney was permitted to search those portions of the passenger compartment of the car in which a weapon could be placed, such as a center console, *Long*, *supra*, and the trial court improperly suppressed the evidence uncovered during that search. This was not a "classic case of [an officer's] overreaching reaction based upon an irrational suspicion or a predetermined decision to see if [he] could catch some gang members with their illegal weapons." Trial Court Opinion, 12/5/17 at 11. Rather, as the trial court acknowledged at the conclusion of the suppression hearing, "it was prudent police activity." N.T. Suppression Hearing, 8/9/17, at 28.[10] *Tuggles*, *supra* (search of vehicle's center console justified by officer where he had reasonable suspicion that he was in danger

---

[10] In fact, it is well-established that the search of passenger compartments of stopped vehicles is permissible where the defendant has been removed from the vehicle. Under such circumstances, where the officers had not planned to arrest the occupants, but were going to allow the defendant to return to the vehicle, the defendant could easily access a weapon in the console once he returns to the vehicle and use it against the officers. *See In the Interest of O.J.*, *supra*; *Commonwealth v. Rosa*, 734 A.2d 412 (Pa. Super. 1999). Similarly, there was no testimony or indication that Officer Sweeney planned to arrest Thorne or the driver for any traffic violations. *See Commonwealth v. Boyd*, 17 A.3d 1274 (Pa. Super. 2011).

based on facts that: stop occurred in high crime, drug and gun area, at night, and defendant's arm made motion over center console).

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/22/18</u>