J-A02003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARMON JORDAN MATEO | : | No. 470 MDA 2018 |

Appeal from the Order Entered February 14, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006008-2017

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 13, 2019**

The Commonwealth of Pennsylvania appeals from the trial court's order granting Defendant's motion to suppress drugs and firearms uncovered following the stop and search of Defendant's car.  After careful review, we affirm.

On August 17, 2017, at 2:14 p.m., Officers Daniel Craven and Christopher Martin of the York City Police Department were working detail, in a marked patrol vehicle, for recent shootings and gang violence in the city.  A detective told them that he had a tip that a group of individuals who possibly possessed firearms were in a parking lot, just east of a local public park, "standing around an orange pick-up truck and a black Chrysler sedan."  N.T. Omnibus Pre-Trial Hearing, 12/18/17, at 3.  The tip also indicated that one particular individual in the group, Anton Hampton, was the specific target who had a weapon.  *Id.* at 3-4.  Within minutes, the officers arrived on the scene

and observed five individuals standing around an orange truck and black Chrysler sedan. *Id.* at 5. For safety reasons, the officers quickly alighted from their vehicle with their service weapons drawn, handcuffed the individuals and ordered them to lie on their stomachs on the ground. *Id.* at 6. The officers then conducted pat-downs of each of the five suspects. No contraband or firearms were found as a result of the frisks. After patting down the individuals, Officer Craven collected their identifications and "tr[ied] to figure out who everyone was." *Id.* At the same time, Officer Martin looked into the front driver's-side window of the locked, black Chrysler and observed a bag of marijuana on the driver's side floor. After retrieving the keys from the Defendant's pocket and opening the car door, the officers found a silver revolver on the driver's side floor mat. The officers then performed a search of the vehicle and found a black Glock semi-automatic pistol under the driver's seat.[1]

Prior to trial, Defendant filed an omnibus motion seeking to suppress the evidence uncovered from the warrantless search of his car. After a hearing, the court granted the motion. The Commonwealth filed a timely notice of appeal from that order, as well as a certification under Pa.R.A.P. 311(d)[2] and complied with the trial court's order for a Pa.R.A.P. 1925(b)

_____

[1] After the search of the car, officers ran a check for outstanding warrants on the suspects and to confirm their identities. The officers testified that they did not believe any of the individuals had outstanding warrants.

[2] The Commonwealth has certified that the order will terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d).

concise statement of errors complained of on appeal. The Commonwealth presents the following issues for our consideration:

(1)     Whether the trial court erred in granting the Defendant's Omnibus Pretrial Motion suppressing the evidence in its findings that the initial police seizure of the Defendant constituted a custodial detention, rather than an investigatory detention that was supported by reasonable suspicion.

(2)     Even if police exceeded the scope of the investigatory detention by its duration, whether the trial court erred in granting the Defendant's Omnibus Pretrial Motion [and] suppressing as fruits of the poisonous tree the marijuana and firearms seized from inside the Defendant's vehicle, where that vehicle was parked on a public street and police observed the evidence in plain view independently of the Defendant's detention, thereby having an independent basis to conduct a warrantless search of the vehicle, supported by probable cause and exigent circumstances.

(3)     Whether the trial court erred in granting the Defendant's Omnibus Pretrial Motion [and] suppressing [as] fruits of the poisonous tree the marijuana and firearms seized from inside the Defendant's vehicle, where the evidence was legally seized under the Inevitable Discovery doctrine, as the police possessed probable cause and exigent circumstances to enter the Defendant's vehicle and seize the evidence without a warrant, and could have done so without obtaining and using the Defendant's car key.

Appellant's Brief, at 3 (renumbered for ease of disposition).

When the Commonwealth appeals from a suppression order, the Superior Court of Pennsylvania follows a clearly defined scope and standard of review:  the appellate court considers only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.

***Commonwealth v. Thorne***, 191 A.3d 901, 903 (Pa. Super. 2018) (citation

omitted).

Instantly, the trial judge stated his reasons for granting suppression as

follows:

> Here, based on a totality of the circumstances, along with the
> Commonwealth conceding that the officers detained all five (5)
> individuals, this Court finds that the interaction [among] the
> officers and the five (5) individuals constituted a custodial
> detention. In reaching such a conclusion, this Court considered
> the following testimony: first, aside from Officer Craven and
> Officer Martin being present, a number of additional officers
> arrived on the scene during the interaction; second, the officers
> were aggressive with the individuals, immediately ordering them
> to lay on the ground on their stomachs, and notifying them that
> they were not free to leave; third, the interaction occurred in a
> public park, in the middle of the day; fourth, upon arriving in a
> marked patrol vehicle, the officers immediately jumped out and
> brandished their weapons; fifth, the officers patted down the
> individuals for weapons and then immediately detained them in
> handcuffs while the officers ran identification and warrant checks.
> As such, the contact constituted a custodial detention[3] and was

---

[3] Whether this encounter constituted an investigative detention or rose to the
level of a custodial detention is of no moment to the resolution of the issue on
appeal, as in either case the officers no longer had reasonable suspicion or
probable cause to detain the individuals at the time they conducted the vehicle
search. We note that the following factors may be considered in determining
whether a detention is custodial: (1) the basis for the detention (the crime
suspected and the grounds for suspicion); (2) the duration of the detention;
the location of the detention (public or private); (3) whether the suspect was
transported against his will (how far, why); (4) the method of the detention
(restraints utilized); (5) the show, threat or use of force; and (6) the
investigative methods used to confirm or dispel suspicions. ***Commonwealth
v. Ellis***, 549 A.2d 1323, 1332 (Pa. Super. 1988). We also recognize that the
handcuffing of a suspect, by itself, does not convert an investigative detention
into an arrest. ***Commonwealth v. Rosas***, 875 A.2d 341, 348 (Pa. Super.
2005); ***see also Commonwealth v. Guillespie***, 745 A.2d 654, 660-61 (Pa.

required to be supported by probable cause. However, this Court finds the Commonwealth failed to establish such.

Trial Court Order and Opinion in Support of Granting Defendant's Omnibus Pre-Trial Motion to Suppress Evidence, 2/14/18,[4] at 6-8

The question of when a traffic stop has concluded or otherwise given way to a new interaction does not lend itself to a "brightline" definition. ***In the Interest of J.N.***, 878 A.2d 82, 85 (Pa. Super. 2005); ***see generally Commonwealth v. Rogers***, 849 A.3d 1185 (Pa. 2004) (Supreme Court discussed whether officer "had reasonable suspicion to detain [the defendant] beyond the initial traffic stop."). Here, the officers were investigating a tip that there was "a guy with a gun in a public area." N.T. Omnibus Pre-Trial

_____

Super. 2000) (for safety purposes, police officers may handcuff individuals during investigative detention). Moreover, every ***Terry*** stop involves a stop and period of time during which the suspect is not free to go but is subject to the control of the police officer detaining him. ***See Terry v. Ohio***, 392 U.S. 1 (1968).

[4] We remind the trial judge that pursuant to Pa.R.Crim.P. 581(I):

> **At the conclusion of the [suppression] hearing**, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581(I)(emphasis added). Here, the judge waited almost two months before issuing his order and accompanying opinion outlining his findings of facts and conclusions of law. Clearly, the rule's intended purpose of immediacy in making findings and conclusions is to protect against fading memories and credibility determinations made after-the-fact on the cold record.

Hearing, 12/18/17, at 22. Once the officers secured the area, handcuffed the individuals, and conducted pat-downs that uncovered no weapons or drugs on the suspects,[5] they no longer had reasonable suspicion to detain the individuals, let alone search one of their cars. At that point, the initial investigation concluded and the officers needed reasonable suspicion or probable cause to further detain the individuals. Both were simply lacking.

The Commonwealth's argument that the marijuana was in plain view or would have been inevitably discovered is disingenuous. First, for the plain view doctrine to apply as an exception to the warrant requirement, the officers, among other things, must have a lawful right of access to the object. *Commonwealth v. Brown*, 23 A.3d 544, 552 (Pa. Super. 2011). Second, the inevitable discovery rule only applies if the object ultimately would have been discovered by lawful means. *Commonwealth v. Perel*, 107 A.3d 185 (Pa. Super. 2014). Again, because the officers no longer had reasonable suspicion that the suspects were armed and dangerous, they did not have lawful access to the Defendant's vehicle and the drugs and firearms would not

---

[5] Officer Martin testified that he was conducting "a cursory search [of the outside] of the vehicles . . . [to] mak[e] sure there were no weapons stashed on top of tires or under cars or things of that nature." N.T. Omnibus Pre-Trial Hearing, 12/18/17, at 23. However, the officers did not testify that they had reason to believe that their safety was at risk where the detained subjects were surrounded by officers, handcuffed and lying on the ground on their stomachs.

have been inevitably discovered "though lawful means." Therefore, considering only the evidence from the Defendant's witnesses, together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted, **Thorne**, **supra**, we conclude that the trial court properly suppressed the physical evidence uncovered from the illegal, warrantless search of Defendant's car.

Order affirmed.[6]


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/13/2019

---

[6] We note that we may affirm the trial court's determination on any grounds. **Commonwealth v Gatlos**, 76 A.3d 44, 62 n.14 (Pa. Super. 2013).