J-A07015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONTAY HILTON | : | |
| | : | |
| Appellant | : | No. 604 EDA 2018 |

Appeal from the Judgment of Sentence January 25, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004357-2017

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 24, 2019**

Appellant, Dontay Hilton, appeals from the judgment of sentence entered on January 25, 2018.  We affirm.

On appeal, Appellant claims that the trial court erred when it denied his motion to suppress.  Because the Commonwealth prevailed at the suppression hearing, we "consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole."  ***Commonwealth v. Russo***, 934 A.2d 1199, 1203 (Pa. 2007) (quotations and citations omitted).  Further, "the record" refers to "the evidentiary record that was created at the suppression hearing."  ***Commonwealth v. Cruz***, 166 A.3d 1249, 1254 (Pa. Super. 2017); ***In re L.J.***, 79 A.3d 1073 (Pa. 2013).  Viewed in this manner, the evidence is as follows.

_____
*   Former Justice specially assigned to the Superior Court.

On February 26, 2017, at approximately 5:36 p.m., Philadelphia Police Officer Michael Fischbach was on duty and driving a marked patrol vehicle in the 2600 block of Frankford Avenue, in Philadelphia. N.T. Suppression Hearing, 10/30/17, at 7-8. Officer Fischbach, a five-year veteran of the Philadelphia Police Department, testified that the 2600 block of Frankford Avenue is a high-crime area; he further testified that, at the time, "[t]he sun was setting [and] . . . it was starting to get dark." *Id.* at 10-15. Officer Fischbach testified:

> I observed an orange Infiniti FX35 traveling northbound.
>
> I observed that it had a dark tinted front windshield along with dark tinted driver's side windows. I believed that to be a hazard for nighttime driving, so I stopped the vehicle at 2600 Frankford Avenue using my lights and sirens.
>
> . . .
>
> At this point, [Appellant] pulled over. He immediately rolled down both driver's side windows.
>
> Upon my approach to the driver's side of the vehicle, I could see [Appellant] quickly reach towards his waist and then over to the passenger's side of the vehicle. There was nobody else in the car, only a bag on the front passenger's seat.
>
> I asked [Appellant] for his license, registration, and insurance. He was able to provide me with those. I returned to my vehicle.
>
> Before I returned to my vehicle, I noticed that he was visibly nervous with shaky voice, shaky hands.
>
> At that point, I returned to my vehicle, ran his driver's license, which was valid. I was able to check his prison release records and observed that he had multiple firearm-related arrests.

So due to his nervousness, the furtive movements, and the prison release records, along with this being a very high-crime area . . . and from my previous experiences with other defendants carrying firearms, the waistband is a very common area to carry a firearm, so I believed he might have been attempting to conceal a firearm or contraband with those movements.

I decided to frisk him for weapons. . . . I had him outside of the vehicle, I was frisking him for weapons.

My backup arrived, Officers McBride and Robinson. I alerted . . . the officers to his movements towards the passenger's side of the vehicle.

As I was placing [Appellant] in the rear of my vehicle, Officer McBride . . . alerted me that he had found a black Glock firearm in the front passenger's seat area of the vehicle.

At this time, I ran [Appellant] for a valid permit to carry, and it was in a revoked status. [Appellant] was placed under arrest. . . .

*Id.* at 8-14.

Philadelphia Police Officer John McBride testified that, when he came upon the scene, he "observed Officer Fischbach with [Appellant] outside [Appellant's] vehicle." *Id.* at 31-32. He testified:

As I was walking up, [Officer Fischbach] said that [Appellant] was reaching towards the passenger's side of the vehicle, so that's where I began to start my look. . . . [Appellant's] vehicle had an open laptop bag situated on the front passenger's seat. I looked inside the laptop bag and I observed a firearm.

*Id.* at 32.

Officer McBride specified that, when he observed the firearm, he was standing outside of the vehicle, but was "reach[ing] in[]." *Id.*

- 3 -

The Commonwealth charged Appellant with numerous violations of the Pennsylvania Uniform Firearms Act. Prior to trial, Appellant filed a motion to suppress the firearm. Appellant claimed that the firearm must be suppressed because he "was stopped[,] frisked, and searched without reasonable suspicion" and the "firearm was obtained in violation of [Appellant's] rights as provided in Article I, Section[] 8 of the Pennsylvania Constitution, the Fourth and [14th] Amendments to the United States Constitution and ***Terry v. Ohio***[, 392 U.S. 1 (1968)]." Appellant's Suppression Motion, 9/21/17, at 1; ***see also*** Appellant's Brief in Support, 11/14/17, at 1-4.

On October 30, 2017, the trial court held a hearing on Appellant's suppression motion, where it heard the above-summarized evidence. The trial court denied Appellant's motion on November 22, 2017. N.T. Hearing, 11/22/17, at 8-9. That day, Appellant proceeded to a stipulated, non-jury trial and, at the conclusion of the trial, the trial court found Appellant guilty of firearms not to be carried without a license, carrying firearms on the public streets of Philadelphia, carrying a loaded weapon, and persons not to possess firearms.[1] N.T. Trial, 11/22/17, at 15. On January 25, 2018, the trial court sentenced Appellant to serve an aggregate term of 11 ½ to 23 months in jail, followed by five years of probation, for his convictions.

Appellant filed a timely notice of appeal. He raises one claim to this Court:

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1), 6108, 6106.1(a), and 6105(a)(1), respectively.

Did Officer Fischbach have reasonable suspicion to continue detaining Appellant beyond the amount of time necessary to issue a traffic citation and to search Appellant's car?

Appellant's Brief at 2.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); **see also** Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing [such a ruling by the] suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa. Super. 2006).

As we have explained, "[t]he Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures. To safeguard this right,

courts require police to articulate the basis for their interaction with citizens in [three] increasingly intrusive situations." ***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa. Super. 2012). Our Supreme Court has categorized these three situations as follows:

> The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from ***Terry v. Ohio*** and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

***Commonwealth v. Smith***, 836 A.2d 5, 10 (Pa. 2003).

In the case at bar, Officer Fischbach performed a traffic stop of Appellant's vehicle because he suspected that Appellant was violating Section 4524(e)(1) of the Vehicle Code.[2] Appellant does not contest the validity of this initial stop. ***See*** Appellant's Brief at 6. Instead, Appellant claims that the trial court erred when it denied his suppression motion because Officer Fischbach neither possessed "reasonable suspicion to continue detaining Appellant beyond the amount of time necessary to issue a traffic citation" nor

---

[2] Section 4524(e)(1) of the Vehicle Code provides:

> No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

75 Pa.C.S.A. § 4524(e)(1).

a reasonable belief that Appellant was dangerous and could "gain immediate control of weapons," which was necessary to search Appellant's car. *Id.* at 7. The former claim is waived, the latter claim fails.

At the outset, Appellant did not raise any claim at the trial level that he was detained "beyond the amount of time necessary [for Officer Fischbach to] issue [him] a traffic citation." *See* Appellant's Suppression Motion, 9/21/17, at 1; N.T. Suppression Hearing, 10/30/17, at 5-6 and 35-36; Appellant's Brief in Support, 11/14/17, at 1-4. The claim is thus waived. *Commonwealth v. Thur*, 906 A.2d 552, 566 (Pa. Super. 2006) ("[w]hen a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression"); *Commonwealth v. Little*, 903 A.2d 1269, 1272-1273 (Pa. Super. 2006) ("[a]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal"); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Appellant also claims that the trial court erred when it denied his suppression motion, as the police searched his vehicle without the necessary reasonable suspicion that Appellant was dangerous and could "gain immediate control of weapons." *See* Appellant's Brief at 7.

In *Terry*, the United States Supreme Court held that, when an officer has a reasonable belief "that the individual whose suspicious behavior he is

investigating at close range is armed and presently dangerous to the officer or to others," the officer may "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."[3, 4]  *Terry*, 392 U.S. at 24.  Both the United States Supreme Court and this Court have held that traffic stops are "especially fraught with danger to police officers."  *Michigan v. Long*, 463 U.S. 1032, 1047 (1983); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) ("we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile"); *Commonwealth v. Cartagena*, 63 A.3d 294, 306

---

[3] The Pennsylvania Supreme Court has explained:

> Pennsylvania courts have consistently followed *Terry* in stop and frisk cases, including those arising under Article 1, § 8 of the Pennsylvania Constitution.  *Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa. 1997); *Commonwealth v. Melendez*, 676 A.2d 226, 230 (Pa. 1996) (*Terry* sets forth the standard for the reasonableness of a search under Art. 1, § 8).

*Commonwealth v. Cook*, 735 A.2d 673, 677 (Pa. 1999).

[4] We note:  "[a] *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime.  The sole justification of the search is the protection of police officers and others nearby."  *Long*, 463 U.S. at 1049 n.14 (quotations, citations, and corrections omitted); *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("a protective search – permitted without a warrant and on the basis of reasonable suspicion less than probable cause – must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby") (quotations and citations omitted).

(Pa. Super. 2013) (*en banc*) ("Courts are mindful that police officers risk their lives daily in the line of duty, especially when conducting a vehicle stop, as they do not know what they will encounter when they approach a car").

In following, the United States Supreme Court has held that, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." **Mimms**, 434 U.S. at 333 n.6. Further, if, during a valid traffic stop, the officer has a reasonable belief that "the suspect is dangerous and the suspect may gain immediate control of weapons," the officer may "search [] the passenger compartment of [the vehicle], limited to those areas in which a weapon may be placed or hidden." **Long**, 463 U.S. at 1049-1050 (quotations and citations omitted);[5] **see also Mimms**, 434 U.S. at 333-334 ("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle [and, if the officer has] . . . reasonabl[y] concluded that the person whom he had legitimately stopped might be armed and presently dangerous[,] . . . [the officer may] conduct[] a limited search for weapons").

---

[5] In **Commonwealth v. Morris**, 644 A.2d 721 (Pa. 1994), our Supreme Court declared: "since **Michigan v. Long** is based on **Terry's** rationale of protecting an officer's safety by permitting a limited search for weapons when the officer has a reasonable and articulable suspicion that a suspect may have access to a weapon, we hold that **Long's** reasoning is also applicable to Article I, § 8 [of the Pennsylvania Constitution]." **Morris**, 644 A.2d at 724 n.3.

As the United States Supreme Court has stressed, this "reasonable belief" must be based upon:

> specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer[] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

*Long*, 463 U.S. at 1049-1050 (citations, corrections, footnote, and some quotations omitted). When assessing the validity of a protective search, "we examine the totality of the circumstances, giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch." *Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa. Super. 2008).

Appellant's claim on appeal – that the search of his vehicle was unconstitutional, as Officer Fischbach did not possess reasonable suspicion that Appellant was dangerous and could "gain immediate control of weapons" – fails. In this case, Officer Fischbach possessed a reasonable belief, based on specific and articulable facts, that Appellant was dangerous and that Appellant possessed a firearm in the passenger compartment of his vehicle. To be sure, the evidence at the suppression hearing establishes that: Officer Fischbach was an experienced, five-year veteran of the Philadelphia Police

Department;[6] the vehicle stop occurred in a high-crime area;[7] at the time of

the stop, "[t]he sun was setting [and] . . . it was starting to get dark;"[8]

Appellant's vehicle had a darkly-tinted windshield and darkly-tinted windows;[9]

when Officer Fischbach approached Appellant's vehicle, he "could see

_____

[6] **See Cartagena**, (holding that the officer's "training and experience and its role in formulating a reasonable suspicion that [the suspect] was armed and dangerous" is a relevant consideration in the reasonable suspicion calculus).

[7] **See Commonwealth v. Foglia**, 979 A.2d 357, 361 (Pa. Super. 2009) (*en banc*) ("whether the defendant was located in a high crime area [may] support [] the existence of reasonable suspicion").

On appeal, Appellant claims that, "though [Officer Fischbach] invoked the words 'high-crime area,' he only knew the area to have narcotics and other warrant-related arrests and did not detail any actual crimes he had investigated in the area." Appellant's Brief at 19. We note that Appellant's presence in a "high crime area" was just one factor in the totality of the circumstances, which justified the protective search of Appellant's vehicle. We further note that Officer Fischbach's testimony regarding the high crime area was indeed relevant to the issue of whether the officer possessed a reasonable belief that Appellant was "dangerous and . . . may gain immediate control of weapons." **Long**, 463 U.S. at 1049-1050; **see also Foglia**, 979 A.2d at 361.

[8] **See Commonwealth v. Zhahir**, 751 A.2d 1153, 1157 (Pa. 2000) (holding that the time of day is relevant to a reasonable suspicion analysis); **In re O.J.**, 958 A.2d 561, 566 (Pa. 2008) (*en banc*) (holding that the officer's "protective search was constitutionally valid," in part, because "[t]he vehicular stop occurred at night, which creates a heightened danger that an officer will not be able to view a suspect reaching for a weapon").

[9] **See Commonwealth v. Murray**, 936 A.2d 76, 80 (Pa. Super. 2007) ("we can conceive of almost nothing more dangerous to a law enforcement officer in the context of a traffic stop than approaching an automobile whose passenger compartment is entirely hidden from the officer's view by darkly tinted windows") (quotations, citations, and emphasis omitted).

[Appellant] quickly reach towards his waist and then over to the passenger's side of the vehicle;"[10] "[t]here was nobody else in [Appellant's] car, only a bag on the front passenger's seat;" based upon Officer Fischbach's "previous experiences with other defendants carrying firearms," "the waistband is a very common area to carry a firearm, so [Officer Fischbach] believed [Appellant] might have been attempting to conceal a firearm;"[11] when Officer Fischbach asked for Appellant's license, registration, and insurance, Officer Fischbach noticed that Appellant "was visibly nervous with shaky voice, shaky hands;"[12] and, when Officer Fischbach ran Appellant's driver's license, Officer Fischbach "observed that [Appellant] had multiple firearm-related arrests."[13]

---

[10] **See Commonwealth v. Buchert**, 68 A.3d 911, 916-917 (Pa. Super. 2013) (holding that "furtive movements" are a valid factor in determining whether "a reasonable police officer [would] believe that his safety was in danger and that [the defendant] may gain immediate control of a weapon").

[11] **See Foglia**, 979 A.2d at 361 ("if a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred"); **see also Commonwealth v. Tuggles**, 58 A.3d 840, 844 (Pa. Super. 2012) ("[w]here a person performs an activity that is indicative of an attempt to secrete a weapon, that movement, regardless of whether it is singular or multiple, can support a belief that the person has a gun").

[12] **See Commonwealth v. Thorne**, 191 A.3d 901, 906 (Pa. Super. 2018) (holding that a suspect's "nervousness and quivering voice [are] additional factors [that may] justif[y an officer's] reasonable suspicion").

[13] **See United States v. Conley**, 4 F.3d 1200, 1207 (3rd Cir. 1993) ("[t]he use of prior arrests and convictions to aid in establishing probable cause is not only permissible, but is often helpful") (citations omitted); **see also Commonwealth v. Freeman**, 150 A.3d 32, 40-41 (Pa. Super. 2016) (the

Viewed in the light most favorable to the Commonwealth, the above evidence constitutes "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed Officer Fischbach] in believing that [Appellant was] dangerous and . . . may gain immediate control of weapons." ***Long***, 463 U.S. at 1049-1050 (quotations and citations omitted). Further, since Officer Fischbach possessed the necessary reasonable suspicion, Officer McBride was permitted to perform the protective search of the open laptop bag located on the front passenger's seat. Specifically, Officer Fischbach directed Officer McBride to perform the search and the bag constituted an "area[] in which a weapon may be placed or hidden." ***See***, ***e.g.***, ***Commonwealth v. Yong***, 177 A.3d 876, 889 (Pa. 2018) ("Pennsylvania adheres to the vertical approach of the collective knowledge doctrine, which instructs that an officer with the requisite level of suspicion may direct another officer to act in his or her stead"); ***Long***, 463 U.S. at

_____

defendant's prior arrest for "a weapons offense in New York" was part of the totality of the circumstances, which, in the end, was "sufficient to support the trial court's determination that the [officer's] detention of [the defendant] was supported by reasonable suspicion"); ***Commonwealth v. Moore***, 805 A.2d 616, 621 (Pa. Super. 2002) (noting that "[t]he prior criminal and supervisory history of the offender" is a valid "factor[, which may be] taken into account to determine the existence of reasonable suspicion to search a probationer"); 61 Pa.C.S.A. § 6153(d)(6).

We note that, on appeal, Appellant does not claim that the trial court erred in considering his prior arrests under the "totality of the circumstances" test; Appellant claims only that, since Officer Fischbach "did not know the outcome of those arrests [or] . . . when the arrests occurred," the factor of Appellant's prior arrests "should be of minimal weight." Appellant's Brief at 18-19.

1049-1050; *see also Morris*, 644 A.2d 723-724 (holding: "the bag in question was properly searched since it was large enough to hold a weapon").

Appellant's claim on appeal thus fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/19