**In the Interest of O.J.**

**Appeal of Commonwealth of Pennsylvania, Appellant.**

Superior Court of Pennsylvania.

Argued May 15, 2008.

Filed Oct. 1, 2008.

James F. Gibbons, Asst. Dist. Atty., for Com., appellant.

Theodore J. Gorka, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J.,
MUSMANNO, LALLY–GREEN,
BENDER, BOWES, PANELLA,
DONOHUE, SHOGAN and ALLEN, JJ.

OPINION BY BOWES, J.:

¶ 1 The Commonwealth appeals from a September 26, 2006 order suppressing drugs seized from a motor vehicle pursuant to a protective search for weapons conducted after a lawful traffic stop.[1] We reverse and remand.

¶ 2 On September 27, 2005, a petition for an adjudication of delinquency was filed against then sixteen-year-old O.J., Appellee, based upon his commission of the offenses of possession of a controlled substance, cocaine, and possession of that controlled substance with intent to deliver. The complaint, as amended on September 26, 2006, indicates that Appellee was in possession of 14.32 grams of cocaine and 12.57 grams of cocaine base.

¶ 3 Although the record does not contain a copy of that document, Appellee filed a motion to suppress the evidence. A hearing was held on that motion on September 26, 2006. Philadelphia Police Officer Bernard Tucker, the sole witness, testified as follows. At approximately 8:00 p.m. on September 27, 2005, he and Officer Farr, whose first name is not contained in the record, were patrolling in the area of Godfrey and Medary Avenues. Officer Tucker noticed Appellee's vehicle traveling westbound on Godfrey Avenue at a speed of at least forty miles per hour. The area was residential with a speed limit of twenty-five miles per hour. Appellee also failed to stop at a stop light.

¶ 4 The officer activated his siren and attempted to stop the vehicle. Appellee disregarded the police car, continued to travel on Godfrey Avenue, made a right turn onto Medary, and then finally stopped on the 600 block of Medary Avenue. Before Officers Tucker and Farr exited their cruiser, they noticed Appellee engaging in "a lot of movement of the arms and the hands in the center area of the vehicle which would have been the console." N.T. Suppression Hearing, 9/26/06, at 4. Officer Tucker delineated that there "was a lot of shuffling and moving around" in that vicinity. *Id.* at 5. Appellee and his passenger were removed from the car and searched for weapons, but none was found. They were then placed in the patrol car.

¶ 5 Officer Tucker returned to Appellee's car and conducted a protective weapons search of the console which was partially opened, where he had observed the hand movement. Officer Tucker explained that police "normally" conduct such a search when they observe the type of hand movement engaged in by Appellee because that behavior creates a fear that a weapon may be located where the movements occurred. *Id.* at 9. Officer Tucker indicated that even though Appellee and the passenger were secure at that point, a brief search of the car was necessary because Appellee and the passenger were not going to be placed under arrest for the Motor Vehicle Code violations but were going to be allowed to return to their car. The officer also stated that the protective search was confined to the area where he saw the hand movement. *Id.* at 10. Even though the console was partially opened, Officer Tucker could not see the inside of the compartment. He lifted the lid and discovered the cocaine.

---

1. This appeal from an interlocutory order suppressing evidence is properly before us as the Commonwealth has certified that the or- der substantially handicaps its prosecution of Appellee. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); Pa.R.A.P. 311(d).

¶ 6 At the suppression hearing, the Commonwealth argued that the protective nighttime weapons search was warranted based upon Appellee's dangerous and evasive driving behavior and rapid hand movements over the console. The suppression court disagreed and granted the motion to suppress. This timely appeal followed. The Commonwealth filed a Pa.R.A.P.1925(b) statement simultaneously with its notice of appeal. A panel affirmed on the basis of the juvenile court's opinion, and this Court granted *en banc* review. Initially, we set forth our standard of review:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980). [Where the defendant] prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 842 (2003) (citations omitted). However, where the appeal of the determination of the suppression court turns on allegations of legal error, "the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 881 (1998).

*Commonwealth v. Mistler,* 590 Pa. 390, 912 A.2d 1265, 1269–70 (2006). We observe that in this case, there was only one witness whose testimony was accepted by the suppression court. Therefore, we consider the propriety of the suppression court's legal determination that Officer Tucker did not have grounds to conduct a protective search of the console for weapons.

> The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry v. Ohio,* 392 U.S. at 1, 21[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). "The issue is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27[, 88 S.Ct. 1868].

*Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721, 723 (1994) (quoting *Michigan v. Long,* 463 U.S. 1032, 1049–1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).

¶ 7 We find particularly instructive in this case certain observations of the United States Supreme Court. That Court has observed that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Long, supra* at 1049, 103 S.Ct. 3469. The Court has also stated:

> [W]e have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, ap-

proximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings–A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963)." *Adams v. Williams*, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. *United States v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops." *Id.* at 234, n. 5, 94 S.Ct. at 476, n. 5.

*Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

■ ¶ 8 The heightened risk of danger to police officers during roadside encounters should be contrasted with the lessened expectation of privacy that a citizen possesses with respect to his vehicle:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.

*New York v. Class*, 475 U.S. 106, 112–13, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (quoting *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974)).

¶ 9 The facts herein are analogous to those examined in the panel decisions of *Commonwealth v. Murray*, 936 A.2d 76 (Pa.Super.2007), and *Commonwealth v. Mesa*, 453 Pa.Super. 147, 683 A.2d 643

(1996), and we find the reasoning employed in those decisions persuasive.

¶ 10 In *Mesa*, police stopped a car based upon erratic and evasive driving behavior and observed a significant amount of movement from the defendant, who was a passenger. They conducted a patdown search, and then reached into the defendant's pocket, discovering a significant amount of cash and a bag of marijuana. The officer testified that he conducted the search for his safety based upon the movements, which caused him to suspect that the defendant was concealing something. The first issue that we confronted was whether police were permitted to conduct a patdown search of the defendant pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which permits an officer to frisk a defendant for weapons if the officer has a reasonable belief based upon articulable facts that criminal activity is afoot and the defendant is armed. While we eventually found that the police exceeded the permissible scope of a weapons patdown, we upheld the police officer's decision to conduct it in the first instance. We noted that the fact that the defendant was moving around "a great deal" supported the officer's belief that the defendant "could be armed and dangerous and was attempting to conceal something." *Mesa, supra* at 646.

¶ 11 In *Murray*, police stopped a vehicle with tinted windows at night for a traffic violation in a narcotics-trafficking area of Philadelphia. At that point, a police officer observed "a lot of movement in the vehicle." *Murray, supra* at 77. The police officer pulled the driver, who was alone, from the vehicle and frisked him. The officer then proceeded to conduct a protective weapons search of "the immediate area" where the driver had been sitting by pulling up an arm rest. He discovered a loaded handgun. Relying upon

*Long, supra, Morris, supra,* and *Mesa, supra,* we concluded that these facts were sufficient to support the officer's stated belief that a weapons search of the vehicle was needed for his protection: 1) the movement inside the vehicle; 2) the fact that it was night and the officer was located in a drug-trafficking area; and 3) the dangerous nature of tinted windows. We upheld the search of the arm rest.

■ ¶ 12 In the present case, we conclude that Officer Tucker's protective search was constitutionally valid as based upon articulable facts supporting a belief that Appellee may have secreted a weapon in the area searched. The vehicular stop occurred at night, which creates a heightened danger that an officer will not be able to view a suspect reaching for a weapon. Appellee had been driving dangerously and initially refused to heed police efforts to stop his car. This evasive behavior supported Officer Tucker's fear that Appellee may have been engaged in criminal behavior and in possession of a weapon. Finally, Appellee's rapid and furtive hand movements over the console indicated that he may have been hiding a weapon in that location. This conclusion also was supported by the fact that the console had been left partially opened. Finally, the search in question was specifically confined to the area where the hand movements had occurred. Given the totality of the facts at Officer Tucker's disposal, we conclude that he reasonably believed that a weapon may have been secreted in the console and that his search of that compartment was not unconstitutional.

¶ 13 In addition, we disagree with the suppression court's conclusion that the weapons search was unnecessary because Appellee and the passenger were secured in the patrol car when the search was conducted. As Officer Tucker clearly explained, he was not going to arrest either occupant of the car for the traffic violations that had occurred but planned to allow them to return to the car. Since, upon his return, Appellee easily could have accessed a weapon in the console to use against Officer Tucker, the police officer was permitted to engage in a search of that compartment for his own protection. *Commonwealth v. Rosa,* 734 A.2d 412 (Pa.Super.1999).

■ ¶ 14 In *Rosa,* we specifically rejected the defendants' position that since they were secure inside a police cruiser, police were not permitted to engage in a weapons search of their vehicle. We noted that even though the defendants were "detained," in the absence of the discovery of contraband during the weapons search, the defendants were going to have been "permitted to reenter the car," and at that point, police would have been subjected to a serious risk that any concealed weapon would be utilized. *Id.* at 417. *See also Morris, supra* at 724 (Court observed that a weapons search of a bag in defendant's car was justified because had the police officer allowed defendant "to return to his vehicle without searching the bag in question, [the officer] would have been taking a grave risk that [the defendant] would remove a weapon from the bag and use it."). As our Supreme Court stated, "constitutional safeguards do not require an officer to gamble with his life." *Id.*

¶ 15 That reasoning applies herein. Officer Tucker testified that he was not planning to arrest Appellee and his passenger for the traffic violations and that he would have permitted them to return to their car. Thus, Officer Tucker was justified in making sure that there were no weapons in the console that could be utilized against him. He simply was not required to face a risk of being shot with a concealed weapon after observing furtive movements in the car. Hence, we reverse.

¶ 16 Order reversed. Case remanded. Jurisdiction relinquished.

¶ 17 Judge MUSMANNO files a Dissenting Opinion in which Judge DONOHUE and Judge ALLEN join.

DISSENTING OPINION BY MUSMANNO, J.:

¶ 1 While the majority sets forth a persuasive argument for reversing the Order of the suppression court, I am constrained to disagree with its conclusion that the officers demonstrated exigent circumstances justifying the warrantless search of the vehicle. The facts underlying this appeal are not in issue. Rather, the parties dispute the suppression court's legal conclusion. Specifically, the parties dispute whether police officers were authorized to conduct a warrantless search of O.J.'s vehicle based upon Officer Tucker's articulated reasons for believing that O.J. posed a potential danger to police.

¶ 2 In *Commonwealth v. Hernandez*, 594 Pa. 319, 935 A.2d 1275 (2007), the Pennsylvania Supreme Court set forth the law regarding warrantless automobile searches as follows:

Under the federal Constitution, law enforcement personnel may conduct a warrantless search of an automobile as long as probable cause exists. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 147–56, 45 S.Ct. 280, 69 L.Ed. 543, T.D. 3686 (1925). This rule, known as the automobile exception to the warrant requirement, is based on the inherent nature of vehicles—their mobility—and applies even if a vehicle is "seized and immobilized." *Commonwealth v. McCree*, 592 Pa. 238, 924 A.2d 621, 629 (Pa.2007) (plurality) (citing Chambers). In Pennsylvania, however, "we have not adopted the full federal automobile exception under Arti-

cle I, Section 8." *Id.* Warrantless vehicle searches in this Commonwealth must be accompanied not only by probable cause, but also by exigent circumstances beyond mere mobility; "one without the other is insufficient." *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87, 93 (Pa. 1999). This dual requirement of probable cause plus exigency is an established part of our state constitutional jurisprudence. *McCree*, 924 A.2d at 629–30. *See also Commonwealth v. Casanova*, 2000 PA Super 34, 748 A.2d 207, 211 (Pa.Super.2000), appeal denied, 570 Pa. 682, 808 A.2d 569 (Pa.2002); *Commonwealth v. Gelineau*, 696 A.2d 188, 192 n. 2 (Pa.Super.1997), *appeal denied*, 550 Pa. 699, 705 A.2d 1305 (1998); *Commonwealth v. Rosenfelt*, 443 Pa.Super. 616, 662 A.2d 1131, 1146 (Pa.Super.1995), appeal denied, 544 Pa. 605, 674 A.2d 1070 (1996).

*Id.* at 1280.

¶ 3 In *Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721 (1994), the Pennsylvania Supreme Court adopted the reasoning set forth by the United States Supreme Court in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), in explaining the circumstances under which a warrantless automobile search may be justified under the federal constitution:

The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry [v. Ohio]*, 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 Ohio Ops 2d 383 . . . .

644 A.2d at 723 (quoting *Michigan v. Long,* 463 U.S. at 1049–50, 103 S.Ct. 3469).

¶ 4 Similarly, the *Hernandez* Court held that potential danger to police or the public satisfies the exigency requirement for warrantless vehicle searches. *Id.* at 1281. In *Hernandez,* however, the Supreme Court concluded that the warrantless automobile search in that case was not justified. *Id.* In so holding, the Supreme Court cautioned that "[t]he fact that potential for danger to police or the public is enough to constitute exigent circumstances does not mean that a mere assertion of danger is sufficient. Rather, *police must be able to articulate the danger posed under the specific circumstances of the case.*" *Id.* at 1282 (emphasis added). The *Hernandez* Court held that the Commonwealth had failed to *articulate* the danger posed under the specific circumstances of that case:

> The transcript from the suppression hearing reveals that the Commonwealth did not offer any evidence in support of its assertion that there was potential for harm. Officer Palmer explained his decision to search the truck with a single sentence: "I wanted to open the gate to see for officers' safety reasons if there was someone else in the truck." N.T., 3/8/05, at 9. He did not attempt to explain **why** he was concerned for his safety.

*Id.* at 1282 (emphasis added).

¶ 5 In this case, the suppression court did not have the benefit of the Supreme Court's decision in *Hernandez.* However, the suppression court's conclusions appear to comport with the Supreme Court's reasoning in *Hernandez.* The suppression court concluded that "[w]ithout any other objective facts or articulated suspicion, mere 'hand movements' are insufficient to form a reasonable belief that the defendant committed a felony or concealed any drugs or weapons in the counsel." Trial Court Opinion, 1/17/07, at 4.

¶ 6 At the time of Officer Tucker's search of the console inside of the vehicle, O.J. and his passenger were secured, in handcuffs, in the back seat of the police cruiser. Opinion at 563–64; Suppression Court Opinion, 1/17/07, at 2. As the Majority noted, Officer Tucker's articulated reasons for searching the vehicle, while O.J. and his passenger were in handcuffs, were that police officers "normally" conduct a search when the observe the type of hand movement engaged in by O.J. because that behavior creates a fear that a weapon may be located where the movements occur; and that a search was necessary because O.J. and his passenger were going to be released to their vehicle. Opinion at 563–64. I cannot conclude that such reasons meet the requirements set forth by our Supreme Court in *Hernandez.*

¶ 7 Officer Tucker failed to articulate specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted him in believing that O.J. was dangerous and that he might gain immediate control of weapons. Certainly, it would be unreasonable to conclude that the handcuffed and secured O.J. could gain immediate control of a weapon. In addition, it is equally unreasonable to conclude, based upon the Commonwealth's articulated reasons, that O.J. would pose a danger to Officer Tucker if he was not arrested, but released.

¶ 8 Certainly, "[o]ur constitutional safeguards do not require an officer to gamble with his life," *see Morris,* 644 A.2d at 724, nor would I ever impose such a risk on a police officer performing his duties. However, this Court must apply the requirements of *Hernandez* in determining whether a warrantless search of an automobile violates our constitutional protections. Because the suppression court's de-

termination comports with *Hernandez,* I would affirm the Order of the suppression court.