J-S04015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES D. HOWE | : | |
| | : | |
| Appellant | : | No. 1089 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 12, 2020
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001142-2019

BEFORE:  OLSON, J., STABILE, J., and MUSMANNO, J.

DISSENTING MEMORANDUM BY OLSON, J.:          **FILED AUGUST 03, 2021**

I respectfully dissent from the learned Majority, as I find that Trooper Danko, fearing for his safety, conducted a constitutionally-sound frisk of Appellant's person based upon specific and articulated observations that would lead a prudent, reasonable person to believe that Appellant may have been armed and dangerous.  Therefore, I would affirm the August 12, 2020 judgment of sentence.

As the Majority reiterates, this Court is bound by the suppression court's findings of fact if those findings are supported by the record, but our review of the suppression court's legal conclusions is *de novo*.  Majority Memorandum at *3.  I concur with the Majority that Trooper Danko's initial inquiry concerning the contents of Appellant's hands constituted a mere encounter because Appellant remained free to disregard Trooper Danko's request for

information and walk away.[1]  *Id.* at \*11.  I further agree that this mere encounter was transformed into an investigative detention when Trooper Danko detained Appellant to make further inquiry concerning the contents of Appellant's hands, which he concealed behind his back, and to ascertain whether Appellant was armed and dangerous.[2]  *Id.*  Because Trooper Danko possessed reasonable suspicion, based upon the totality of the circumstances, that criminal activity was afoot, I agree that Trooper Danko had lawful grounds which permitted him to stop and detain Appellant for investigatory purposes. *Id.*  I would, however, conclude that Trooper Danko, having articulated reasonable facts to suspect that Appellant was armed or dangerous, could lawfully frisk Appellant for weapons **after** Appellant revealed the Christmas light projector.  Accordingly, I dissent.

The learned Majority characterizes Trooper Danko's decision to frisk Appellant's person for additional weapons after Appellant produced the suspected stolen Christmas light projector as having been based "more on a hunch than a reasonable belief or suspicion that [Appellant] was armed and dangerous."  *Id.* at \*12.  I disagree.

_____

[1] Trooper Danko stated that as Appellant approached him, he asked Appellant what was in his hands in order to make sure it was not a weapon.  N.T., 1/16/20, at 5.  At this moment, the level of interaction between Trooper Danko and Appellant was only that of a mere encounter because Appellant was free to disregard Trooper Danko's inquiry.

[2] Trooper Danko stopped Appellant, made him reveal the contents of his hands, and required him to provide his name and birth date.  N.T., 1/16/20, at 7, 14-15.

The reasonable suspicion standard allows "a police officer to stop an individual based upon specific and articulable facts and rational inferences from those facts that warrant a belief that the individual is involved in criminal activity." ***Commonwealth v. Hicks***, 208 A.2d 916, 932 (Pa. 2019) (citation and original quotation marks omitted). If an investigative detention is lawful, a police officer may proceed to frisk the person when the police officer reasonably suspects that the person stopped is armed and dangerous. ***Id.*** at 933. **Absolute certainty** that the individual is armed and dangerous is **not required** before conducting a constitutionally-sound ***Terry***-frisk.[3] ***Commonwealth v. Taylor***, 771 A.2d 1261, 1269 (Pa. 2001) (reiterating that, "[t]he [police] officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his[,or her,] safety or the safety of others was in danger"). A police officer need only possess **reasonable suspicion**, based upon specific and articulable facts, that criminal activity is afoot and that the individual whose suspicious behavior the police officer is investigating at close range **may be** armed and dangerous. ***Commonwealth v. Davis***, 102 A.3d 996, 999 (Pa. Super. 2014), *appeal denied*, 113 A.3d 278 (Pa. 2015).

As noted by the Majority, Appellant does not contest the conclusion that Trooper Danko possessed reasonable suspicion to stop Appellant and request

---

[3] ***Terry v. Ohio***, 392 U.S. 1, 27 (1968).

that he produce the contents of his hand. Majority Memorandum at *4 n.3. Appellant asserts, however, that once he produced the contents of his hands and revealed the Christmas light projector, "any suspicion that [Appellant] was armed and dangerous [was] dispelled." Appellant's Brief at 30. My review of the record, however, persuades me that Trooper Danko articulated specific grounds that would lead a prudent, reasonable person, based upon the totality of the circumstances, not only to suspect that Appellant was engaged in criminal activity but, also, that he may have been armed and dangerous even after he produced the Christmas light projector.

The record demonstrates that Trooper Danko encountered Appellant in a dark, residential area and needed a flashlight to observe Appellant. N.T., 1/16/20, at 17. Immediately upon encountering Trooper Danko, Appellant concealed the contents of his hands behind his back, which a prudent, reasonable person could perceive as suspicious behavior given that Appellant was approaching his own residence and was unaware that the persons standing outside his residence were, in fact, police officers, who were there to serve a warrant on a third party. *Id.* at 5-6, 14. Because of Appellant's suspicious behavior, Trooper Danko possessed reasonable suspicion that Appellant was involved in criminal activity. Therefore, Trooper Danko was permitted to stop and detain Appellant for investigative purposes.

Due to the darkness of the area and the need to use a flashlight, Trooper Danko was unable to discern the nature of the large black object in Appellant's hands **before** Appellant concealed the contents of his hands. *Id.* at 5-6,

- 4 -

13-14. Trooper Danko was only able to observe that the object was "the size of a softball" with a stake attached that resembled the type of stake placed in the ground when erecting a tent. *Id.* Trooper Danko asked Appellant to remove his hands from behind his person and display the contents of his hands. *Id.* at 7. Trooper Danko testified that, although Appellant displayed the Christmas light projector upon Trooper Danko's request, the moist dirt that was attached to the projector stake was consistent with a stake that was just removed from the ground and led him to believe that Appellant recently stole the item. *Id.* at 11. Therefore, Trooper Danko's reasonable suspicion that criminal activity was ongoing permitted Trooper Danko to further detain Appellant for investigatory purposes.

Appellant contends that, at this point, Trooper Danko was required to articulate new specific facts demonstrating a reasonable suspicion that Appellant was armed and dangerous in order to justify the subsequent *Terry*-frisk of Appellant's person.[4] Appellant's Brief at 30-31; *see also* Majority Memorandum at *4. Appellant fails to cite any support for his contention, and I disagree that Trooper Danko's reasonable suspicion that Appellant was armed and dangerous, which was formulated upon Appellant

_____

[4] Appellant asserts that "when he obeyed Trooper Danko's commands and showed his hands and when Trooper Danko realized what this object actually was, there was no longer any specific and articulable grounds that would lead a reasonable officer to have feared for his safety and the *Terry*[-]frisk was thus impermissible." Appellant's Brief at 30.

hiding the contents of his hands behind his back, was dispelled upon Appellant's production of the Christmas light projector.

Trooper Danko stated that based upon his experience, when an individual has an object in his, or her, hands and then conceals the object behind his, or her, back, this presents a safety concern because the concealed object may be a weapon. N.T., 1/16/20, at 7. Appellant's concealment of the contents of his hands behind his back upon encountering Trooper Danko made Trooper Danko fear for his safety, particularly because he was uncertain whether Appellant concealed a weapon. *Id.* at 17-18 (testifying that, "after I [discovered what the object was,] there still could have been something behind his back that he was reaching for").

The Commonwealth contends that because Trooper Danko possessed reasonable suspicion that criminal activity was afoot, his subsequent frisk of Appellant for weapons was constitutionally supported by a reasonable suspicion that Appellant was armed and dangerous based upon Appellant's suspicious and furtive movement in concealing the contents of his hands when approaching Trooper Danko. Commonwealth's Brief at 12-13. The Commonwealth asserts that this reasonable suspicion continued beyond the discovery of the Christmas light projector because additional items, including weapons, may have been hidden behind Appellant's back. *Id.* I agree.

A prudent, reasonable person, under the totality of the circumstances, may have believed Appellant hid more than the Christmas light projector behind his back. Trooper Danko did not conduct the *Terry-*frisk because he

believed Appellant stole the Christmas light projector. Rather, Trooper Danko specifically articulated that he conducted a *Terry*-frisk of Appellant's person because he reasonably believed that Appellant may have concealed something in addition to the Christmas light projector, such as a weapon, behind his back when he concealed the contents of his hands upon encountering Trooper Danko. *Id.* at 17-18.

As the Majority points out, when assessing whether reasonable suspicion sufficient to support a *Terry*-frisk exists, consideration must be given to the specific, reasonable inferences that a police officer can draw from the totality of the circumstances in light of his experience. Majority Memorandum at *12-13. When a police officer reasonably believes that a suspect **may be** armed and dangerous, the police officer may conduct a frisk for weapons.[5] *Id.* at *13 (citations omitted).

_____

[5] The Majority suggests that the case *sub judice* involved a suspected offense that "does not typically involve weapons" and, therefore, additional circumstances, such as a bulge in the suspect's clothing, the observation of an object that may be a weapon, or a suspect's sudden movement towards a place where a weapon may be secreted, must be present in order for a police officer to formulate sufficient, reasonable suspicion that a person is armed and dangerous. Majority Memorandum at *13. The absence of these additional circumstances, such as bulges in clothing or sudden movement, does not negate a reasonable belief that a suspect is armed and dangerous. Rather, the totality of the circumstances must be considered to determine whether reasonable suspicion that the person was armed and dangerous existed. Trooper Danko, based upon the totality of the circumstances, could not know whether the suspected offense, if any, was one that typically involved a weapon.

Here, Trooper Danko, upon encountering Appellant in a dark area and requiring a flashlight, was unable to discern the nature of the object in Appellant's hand, which could have been a weapon, *i.e.*, a gun or knife, an object that could be used as a weapon, *i.e.*, a sharp, pointed stake used for securing a tent, a Christmas decoration, or a combination of these items. Trooper Danko stated that based upon his experience, when an individual has an object in his, or her, hands and then conceals the object behind his, or her, back in a manner in which Appellant acted, this presents a safety concern because the concealed object may be a weapon. N.T., 1/16/20, at 7. It is axiomatic that Trooper Danko should proceed with caution when assessing whether Appellant was armed and dangerous and, although Trooper Danko subsequently learned that Appellant had secreted a Christmas light projector behind his back, Trooper Danko articulated that he was uncertain whether Appellant had been holding additional items, such as a weapon, which he secreted behind his back along with the Christmas light projector upon encountering Trooper Danko.

Therefore, I would find that Trooper Danko, fearing for his safety, conducted a constitutionally-sound stop and frisk of Appellant's person based upon the specific and articulated observations that would lead a prudent, reasonable person to believe that criminal activity was afoot and that Appellant may be armed and dangerous. **See In re O.J.**, 958 A.2d 561, 565 (Pa. Super. 2008) (stating that, reasonable suspicion to conduct a **Terry-**frisk for safety purposes may be based upon the movements of an individual that

cause the police officer to suspect the individual is concealing something), *appeal denied*, 989 A.2d 918 (Pa. 2010); **see also Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa. Super. 2019) (reiterating that, "[i]n considering whether evidence supports a **Terry**[-]frisk, we are guided by common sense concerns, giving preference to the safety of the [police] officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon" (citation omitted)), *appeal denied*, 237 A.3d 393 (Pa. 2020).

In conducting what I would find was a constitutionally-sound frisk of Appellant's person, Trooper Danko patted-down Appellant's outer garments, which he was permitted to do, in search of any weapons Appellant may have on his person. **Commonwealth v. E.M.**, 735 A.2d 654, 661 (Pa. 1999) (stating that, "when [a police] officer is justified in believing that the individual whose suspicious behavior he[, or she,] is investigating is armed and presently dangerous to the [police] officer or to others, the [police] officer may conduct a frisk of the suspect's outer clothing to determine whether the person is in fact carrying a weapon"). In frisking Appellant, Trooper Danko plainly felt an object in the front left pocket of Appellant's outer garment that Trooper Danko, through his training and experience,[6] immediately identified as a glass

---

[6] Trooper Danko had been involved in "hundreds" of stops involving glass smoking devices, such as the one detected in Appellant's front left pocket, and that the device's unique length made the device immediately identifiable to him as criminal contraband upon feeling such a device through a person's

smoking device used for the ingestion of a controlled substance. Trooper Danko was permitted, under the "plain feel doctrine"[7] to seize this item that he reasonably perceived as a contraband item. **Stevenson**, 744 A.2d at 1265 (stating that, when a police officer is conducting a constitutionally sound **Terry-**frisk and feels an object whose mass and contour makes its criminal character immediately apparent to the police officer, the police officer may seize the item). Consequently, I would find that Appellant's issue is without merit and affirm the judgment of sentence.

_____

outer garment, which he had done on "numerous" prior occasions. N.T., 1/16/20, at 8-9.

[7] The "plain feel doctrine" permits "a police officer [to] seize non-threatening contraband detected through the [police] officer's sense of touch during a **Terry**[-]frisk if the [police] officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression[,] and the [police] officer has a lawful right of access to the object." **Commonwealth v. Stevenson**, 744 A.2d 1261, 1265 (Pa. 2000).