J-A24031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HECTOR RIOS | : | No. 2195 EDA 2021 |

Appeal from the Order Entered September 29, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002156-2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED FEBRUARY 21, 2023**

The Commonwealth appeals from the order granting the suppression motion filed by Hector Rios ("Rios").  We affirm.

The suppression court summarized the factual history relevant to this appeal as follows:

> On December 10, 2019, at approximately 8:20 P.M., Philadelphia Police Officer Theodore [Brown] ("Officer Brown") responded to a radio call concerning a person with a weapon at Nazareth Hospital . . ..  The call relayed a general description of a Hispanic male wearing a red hat, red pants, and driving a silver BMW.  [When he arrived a]t the scene, Officer Brown, an 18-year veteran at the time, testified he observed a male wearing a red hat and matching the radio call description, driving towards the exit of the parking lot.  Specifically, Officer Brown saw this male as he pulled into the Nazareth Hospital parking lot.
>
> Once inside the parking lot, Officer Brown . . . turned his vehicle around and got behind [Rios's] vehicle.  When Officer Brown exited his vehicle and approached [Rios's] vehicle, [Rios's] vehicle had already been stopped by fellow officers[,] and [Rios] was standing outside the driver's door.  [Rios] was not in [handcuffs].  Officer Brown brought [Rios] to the rear of the BMW

and asked him to place his hands on the trunk of the vehicle. Officer Brown could not recall whether he escorted [Rios], or whether [Rios] simply walked with him to the rear of the vehicle. Once at the rear of [Rios's] vehicle, [Officer Brown] asked whether [Rios] had any weapons on his person, [to] which [Rios] replied[,] "No." Officer Brown completed a brief frisk around [Rios's] waistband.

Officer Brown escorted [Rios] to the rear of his police vehicle and waited with him. The rear of Officer Brown's police car was approximately two . . . car lengths away from the door of the BMW.

Officer Brown testified that [Rios] was "cooperative" and "polite." They stood behind the police vehicle for approximately [ten] minutes and engaged in a brief conversation for paperwork purposes. Officer Brown stated [Rios's] overall behavior was not alarming. Officer Brown stated he was physically holding onto [Rios] while they stood at the rear of the police car; however, [Rios] made no effort to run or break free. Officer Brown stated he felt secure standing next to [Rios]. There were no civilians in the area. . . ..

The [c]omplainant [who reported that Rios had threatened her] was in an emergency department waiting room when officers arrived. The [c]omplainant told Sergeant [Zaqueo] Velez that [Rios] threatened to get a gun, come back, and do something to her following a domestic dispute. The [c]omplainant further told Sergeant Velez that [Rios's] firearm was in his car, under the steering column in a hole cut in the dash or a slit. Sergeant Velez subsequently radioed the officers outside to look in the car for the firearm in the location given by the [c]omplainant. The officers outside relayed back to Sergeant Velez that they had looked around, but they did not see anything. Sergeant Velez then walked out to the vehicle. Per Sergeant Velez, [Rios] was already inside of a police vehicle when he walked out to the car to look for the weapon about which the [c]omplainant told him.

There was no contraband in plain view inside [Rios's] car, per Sergeant Velez. Ultimately, Sergeant Velez found a hole cut underneath the steering column of [Rios's] BMW. He stuck his hand into the cut hole, up to his wrist, and felt a metal object he perceived to be a firearm. He subsequently pulled out a firearm.

The officers did not obtain a search warrant prior to searching the vehicle. Moreover, [Rios] did not consent to the search of his vehicle.

Suppression Court Opinion, 3/9/22, at 2-4 (paragraph numbers and citations to the record omitted).

The police arrested Rios and charged him with violations of the Uniform Firearms Act and other offenses.[1] Rios filed a suppression motion challenging the warrantless search of his car and the recovery of the gun. The suppression court held a hearing at which Officer Brown and Sergeant Velez testified. *See* N.T., 9/14/21, at 7-45. The Commonwealth asserted that the sergeant properly recovered the gun because the police had probable cause and exigent circumstances to conduct a warrantless search of Rios's car. *See id*. at 53-57; *see also Commonwealth v. Alexander*, 243 A.3d 177, 207 (Pa. 2020) (holding that the Pennsylvania Constitution requires a warrantless vehicle search be supported by probable cause and exigent circumstances). Alternatively, the Commonwealth argued that police conducted a proper protective search of the car for weapons based on reasonable suspicion that Rios was armed and dangerous. *See* N.T., 9/14/21, at 57-58; *see also Commonwealth v. Morris*, 644 A.2d 721, 723-24 (Pa. 1994) (adopting *Michigan v. Long*, 463 U.S. 1032 (1983), holding that permitted protective searches of vehicles for weapons).

_____

[1] *See* 18 Pa.C.S.A. §§ 6105(a), 6106(a)(1), 6108. The criminal complaint also charged Rios with terroristic threats, simple assault and recklessly endangering another person, *see* 18 Pa.C.S.A. §§ 2706, 2701, 2705, but the municipal court dismissed those charges for lack of evidence.

The suppression court rejected the Commonwealth's arguments and granted Rios's suppression motion. Specifically, the suppression court concluded that the police had probable cause to believe that Rios had committed a crime but no exigent circumstances justified Sergeant Velez's warrantless search of Rios's vehicle. Additionally, the court determined that a protective search did not apply because the police had already detained Rios and other officers had searched the vehicle before the sergeant searched the vehicle for a second time and found the gun. *See* N.T., 9/29/21, at 8-9. The Commonwealth timely appealed pursuant to Pa.R.A.P. 311(d), and both it and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

> Did the lower court err in suppressing a gun police found in [Rios's] car after a legal stop on the ground that they did not first obtain a warrant, where the police were justified in conducting a protective safety search of the car . . .?

Commonwealth's Brief at 4.[2]

Our review of an order granting a suppression motion is governed by the following standards:

> [A]n appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. [Where the defendant] prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when

---

[2] The Commonwealth has abandoned its claims that Sergeant Velez conducted a proper warrantless search under *Alexander*. *See* Commonwealth's Brief at 7 n.2. Rios did not file an appellee's brief.

read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Cartagena*, 63 A.3d 294, 298 (Pa. Super. 2013) (*en banc*) (internal citation omitted).

"[I]t is hornbook law that the [F]ourth [A]mendment to the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution protect citizens from 'unreasonable searches and seizures.'" *Commonwealth v. Simmons*, 17 A.3d 399, 402-03 (Pa. Super. 2011) (internal citation omitted). "Warrantless searches and seizures . . . are unreasonable *per se*, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement." *See id*.

A protective search of a vehicle for weapons is one such exception to the warrant requirement. In *Long*, the United States Supreme Court extended the principles of a protective "frisk" exception to an automobile. *See Long*, 463 U.S. at 1049 (discussing *Terry v. Ohio*, 392 U.S. 1 (1968), and holding that *Terry* applied to persons as well as property, such as a vehicle); *see also Morris*, 644 A.2d at 723 (adopting *Long*). Under the protective search exception, police may search the passenger compartment of a vehicle, and containers therein, where a weapon may have been placed or hidden. *See Long*, 463 U.S. at 1049. The validity of a protective search of a vehicle

turns on whether a reasonably prudent officer would be warranted in the belief that his or her safety or the safety of others was in danger, that is, whether the police possess specific and articulable facts to sustain a reasonable suspicion that the person is dangerous and may gain control of a weapon. *See id*. As the United States Supreme Court reasoned in *Long*:

> Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in a [vehicle stop] break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. Or . . . the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. In any event, we stress that a *Terry* investigation . . . involves a police investigation at close range, when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger . . ..

*Long*, 463 U.S. at 1051-52 (internal citations and quotations omitted).

The facts and circumstances giving rise to an officer's reasonable belief that a person is dangerous and could gain control of a weapon versus exigent circumstances justifying a warrantless vehicle search based upon probable cause may overlap. *Compare Commonwealth v. Perry*, 798 A.2d 697, 703 (Pa. Super. 2002) (plurality) (finding probable cause and exigent circumstances when the occupants of a vehicle attempt to elude police and stopped their vehicle in the middle of a road, the officers' specific knowledge of a shooting that had occurred, and eyewitness identifications of the car's occupants as being involved in the shooting) *with In re O.J.*, 958 A.2d 561,

566 (Pa. Super. 2008) (*en banc*) (holding that driver's dangerous driving, failure to immediately stop for police, and rapid and furtive hand movements over a console that was left partially open were factors that supported the officer's belief that the driver weapon may have been secreted in the console and justified a protective search) *and Cartagena*, 63 A.3d at 307 (holding that the Commonwealth did not prove a reasonable basis for a protective search based on evidence of the driver's nervousness during a late night stop of a vehicle with heavily tinted windows). Yet, the exceptions permitting a warrantless search to discover or preserve evidence with probable cause and exigent circumstances under *Alexander* and a search to ensure officer safety under *Long* and *Morris* are distinct, and it is the Commonwealth's burden to establish that the police did not recover the challenged evidence in violation of the defendant's rights. *See* Pa.R.Crim.P. 581(H).

The Commonwealth here argues that the police search of the vehicle was permissible as a protective search of Rios's car for weapons. *See* Commonwealth's Brief at 9. The Commonwealth notes, correctly, that "*Terry*, *Long*, and *Morris* speak to a wholly different body of law than" the requirement, under *Alexander*, that a warrantless search be conducted with probable cause and exigent circumstances. *Id*. at 10. The Commonwealth asserts the reports from a known complainant that Rios previously hid a gun in his car that he threatened to retrieve during an argument gave rise to specific and articulable facts for police to believe that Rios was armed and dangerous. *See id*. at 13. The Commonwealth claims that the police thus

had reasonable suspicion to search Rios's vehicle for a weapon and that the suppression court erred when finding that Rios did not pose an immediate threat because he had been separated from his car and detained. *See id*. at 13-14. Further, the Commonwealth argues that the suppression court erred by conflating the officer safety concerns allowing a protective search for weapons with *Alexander*'s requirements for exigent circumstances. *See id*.

The suppression court, in its Rule 1925(a) opinion, concluded that Sergeant Velez's search of Rios's car exceeded the scope of the protective safety search exception. The court distinguished *Morris*, finding:

> When Officer Brown arrived at Nazareth Hospital, [Rios] had already been removed from his vehicle. Officer Brown conducted a brief frisk of [Rios], and no weapons were found on him. Officer Brown testified [Rios's] actions were not alarming, as compared to *Morris*, who failed to comply with [an] officer's direction to put his hand on the st[ee]ring wheel. Officer Brown testified [Rios] was cooperative. There was no testimony of contraband, or weapons in plain view, as compared to *Morris*, where [a] metal pipe was visible as soon as the police opened [Rios's] car door. ***Furthermore, in the instant case, the officers had already done a search of the vehicle and had not found anything until Sergeant Velez searched the vehicle again***, while [Rios] was in [or by] the police car, and recovered the hidden firearm.

Suppression Court Opinion, 3/9/22, at 9 (emphasis added).

Following our review, we are constrained to conclude that the Commonwealth fails to address the critical point in the trial court's opinion, namely, that Sergeant Velez searched the vehicle *after* a previous, but unsuccessful, protective search. *See* Suppression Court Opinion, 3/9/22, at 3-4; *see also* N.T., 9/14/21, at 37-40 (indicating that the sergeant testified

he obtained information from the complainant, ordered the first search of Rios's car, "tried to describe" where the gun was, but the other officers reported they did not find "any type of access" to where to the gun was located, whereupon he walked outside to the car, entered the vehicle, and found the gun in the steering column). We acknowledge the Commonwealth's legal and policy arguments in support of reversal, and we agree that Pennsylvania law recognizes a protective search of a vehicle for weapons as a settled exception to the warrant requirement that is independent of *Alexander*. We do not dispute that vehicle stops are among the most dangerous types of interactions involving the police. We also acknowledge that the mere fact that an officer detains an individual away from a vehicle will not diminish the threat posed by a suspected dangerous individual were he to have access to a weapon upon returning to his vehicle. *See Long*, 463 U.S. at 1051-52; *In re O.J.*, 958 A.2d at 563. The Commonwealth's arguments may justify the *first* protective search of Rios's vehicle, which police conducted after Sergeant Velez received information to believe that Rios was armed and dangerous and at the sergeant's direction.

However, it is the *second* search that is at issue here, and the Commonwealth provides no meaningful discussion of the search of Rios's vehicle that was conducted after the previous unsuccessful search. The Commonwealth only once refers to the fact that there were two searches of Rios's car, *see* Commonwealth's Brief at 6-7, and it offers no legal argument

or citation to a decision concerning a second or subsequent **Terry** search.[3]

Thus, we conclude that the Commonwealth has not adequately developed its argument on appeal, and, accordingly, it has waived its arguments in support of the lawfulness of the **second** search. **See Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) (noting that this Court will not act as counsel and will not develop arguments on behalf of an appellant). Accordingly, we affirm the order suppressing the gun as the fruit of the unlawful second search of Rios's car.

Order affirmed.

_____

[3] We have yet to find a published Pennsylvania case addressing a scenario similar to this case. However, other courts, and at least one unpublished decision from this Court, have considered second or subsequent **Terry** searches and reached differing conclusions. **Cf. United States v. Osbourne**, 326 F.3d 274, 278 (1st Cir. 2003) (declining to find a subsequent frisk unreasonable *per se* and holding that a second frisk was proper based on information that the defendant always carried a gun, was involved in gang activity and police were attempting to detain multiple occupants of a car); **State v. Flowers**, 734 N.W.2d 239, 255 (Minn. 2007) (noting that the basis for an initial detention and vehicle search for weapons had dissipated by the time of a second search); **State v. Pierce**, 77 P.3d 292, 296 (N.M. 2003) (concluding that a second frisk constituted an impermissible search for drugs on the defendant's person); **Balentine v. State**, 71 S.W.3d 763, 770 (Tex. Crim. App. 2002) (holding that a defendant's behavior after a first frisk gave rise to a belief that the defendant may be armed to justify a second frisk); **cf. also Commonwealth v. Powell**, 222 A.3d 816, 2019 WL 4949373, at *5 (Pa. Super. Oct. 2019) (unpublished memorandum) (rejecting a claim that a second frisk was improper noting that the defendant continued to touch his jacket after a first frisk); Pa.R.A.P. 126 (permitting citation to unpublished memorandum of this Court filed after May 2019).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/21/2023</u>