J-A24012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLY PRENTICE | : | |
| | : | |
| Appellant | : | No. 2943 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 6, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008731-2022

BEFORE: LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED JANUARY 8, 2025**

Kelly Prentice appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction of one count of person not to possess a firearm.[1]  After careful review, we affirm.

The trial court summarized the factual history as follows:

On November 22, 2022, Police Officer Joseph McCarthy . . . was wearing full uniform[] and operating a marked police vehicle with his partner[,] Officer Krowicki[,[2]] while on routine patrol along the 5400 block of Walnut Street in Philadelphia[.]  This area of Walnut Street has three lanes traveling westbound in one direction[,] with residential and business properties.  At approximately, 8:05[ p.m.], [] Officer [McCarthy] saw a dark blue Chevy Malibu[] make a right turn[,] without signaling[,] from the left lane, across traffic on to 55th Street.  The [p]olice activated lights and sirens, then followed the car, until it stopped on Sansom Street.  Officer

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] Officer Krowicki's first name does not appear in the record.

McCarthy walked to the driver's side of the car and initially thought the driver was the sole occupant of the vehicle because the front passenger seat was very reclined.

Officer McCarthy spoke with the driver[3] and obtained his documentation.  [Officer Krowicki] engaged with [Prentice] on the passenger side, who remained in a reclined position – until the police flashlight hovered over his waist area, at which point he sat up without bringing the seat forward.  When questioned about [whether he possessed] a firearm, the driver responded that he was licensed and had a gun on his person.  Upon hearing the word "firearm," [Prentice] looked at the driver, then in the direction of the police officer.  The driver was removed from the vehicle for [] Officer [McCarthy] to "take control of the firearm" and was "placed at the rear of his vehicle un-handcuffed during the stop."  The driver indicated he had no other weapons in the car.  [The driver's] firearm was secured from his person and placed in the police vehicle.

Officer McCarthy then asked [Prentice] to step out [of] the car, but [Prentice] did not immediately comply.  After multiple requests, [Prentice] turned and placed both feet on the ground but remained seated in the vehicle and continued to lean forward.  [] Officer [McCarthy] instructed [Prentice] "several times to stand up out of the vehicle, to the point where [he] had to step forward and escort [Prentice] up."  As [Prentice] stood, Officer McCarthy [frisked] the front of [his] waistband and immediately identified a firearm.  [] Officer [McCarthy knew Prentice] from prior contacts and knew he was ineligible to possess a firearm.  [Prentice] was subsequently placed in handcuffs and arrested.

Trial Court Opinion, 12/13/23, at 2-3 (citations omitted).

On November 22, 2022, Prentice was arrested and charged, *inter alia*,[4]

with the above-mentioned offense.  On December 27, 2022, Prentice filed a

---

[3] The driver's name does not appear in the record.

[4] Prentice was also charged with carrying a firearm without a license, carrying firearms on public streets in Philadelphia, and resisting arrest.  **See id.** at §§ 6106(a)(1), 6108, 5104, respectively.

suppression motion arguing that Officer McCarthy lacked the requisite articulable reasonable suspicion to frisk Prentice during the traffic stop and that the recovered firearm should be suppressed. On April 26, 2023, the trial court conducted a suppression hearing, after which it denied Prentice's suppression motion.

On April 26, 2023, immediately after the suppression hearing, Prentice proceeded to a non-jury trial, after which the trial court convicted him of person not to possess a firearm and found him not guilty of the remaining offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report. On July 6, 2023, the trial court sentenced Prentice to a period of 6 to 12 years' incarceration.

On July 17, 2023, Prentice filed a timely post-sentence motion,[5] which was denied by operation of law on November 15, 2023. Prentice filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Prentice now raises the following claim for our review: "Where the video of the incident demonstrates that police frisked [Prentice] for weapons despite

_____

[5] Prentice filed his post-sentence motion 11 days after the imposition of his sentence. **See** Pa.R.Crim.P. 720(A)(1) ("[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence."). The 10th day to timely file his post-sentence motion, July 16, 2023, was a Sunday, which is excluded from the time computation. **See** 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such time period shall fall on a Saturday or Sunday . . . such day shall be omitted from the computation."). Consequently, Prentice's post-sentence motion was timely filed.

having no reasonable basis to suspect he was armed and dangerous, did the [trial] court improperly deny suppression of the firearm found in [Prentice]'s waistband?" Brief for Appellant, at 3.

Prentice argues that the trial court erred in denying his suppression motion because Officer McCarthy failed to articulate a reasonable suspicion that Prentice possessed a firearm. *See id.* at 8-20. Prentice acknowledges that police lawfully stopped the vehicle. *See id.* at 9-10. However, Prentice contends that the trial court's other factual findings were not supported by the record. *See id.* at 10-20. In particular, Prentice asserts that he was not leaning forward in order to conceal the firearm in his waistband but to answer the officers' questions and to avoid hitting his head when exiting the vehicle. *See id.* at 10-11, 13-15, 17-20. Additionally, Prentice posits that his behavior did not change when Officer McCarthy mentioned "firearms," and that he "readily complied" with officers' commands to exit the vehicle. *See id.* at 10-13, 15-17.

Our standard of review in addressing a challenge to a denial of a suppression motion is well settled:

> [This Court] is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [this Court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

- 4 -

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa. Super. 2015) (citation omitted). Moreover, "[i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Baker*, 946 A.2d 691, 693 (Pa. 2008) (citation omitted).

"[B]oth the Fourth Amendment [of the United States Constitution] and Article I, Section 8 [of the Pennsylvania Constitution] protect individuals against unreasonable searches and seizures, and warrantless searches or seizures are presumptively constitutionally unreasonable, subject to certain established exceptions." *Commonwealth v. Brown*, 23 A.3d 544, 552-53 (Pa. Super. 2011) (*en banc*). This Court has explained:

> The law recognizes three distinct levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention; . . . and (3) a custodial detention.
>
> A mere encounter can be any formal or informal interaction between an officer and a citizen[] but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond and[,] therefore[,] need not be justified by any level of police suspicion.
>
> In contrast, an investigative detention carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion[,] it requires reasonable suspicion of unlawful activity.
>
> Finally, a custodial detention occurs when the nature, duration[,] and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

*Commonwealth v. Jefferson*, 256 A.3d 1242, 1247-48 (Pa. Super. 2021) (en banc) (citations, quotation marks, and some ellipses omitted).

Generally, a motor vehicle stop is an investigative detention. *See Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023). During a traffic stop, police are generally authorized to conduct "ordinary inquiries incident to the traffic stop" such as checking driver's licenses, automobile registration, and proof of insurance. *Rodriguez v. U.S.*, 575 U.S. 348, 355 (2015). These inquiries include those relating to officer safety. *See id.* at 356. This safety interest stems from the fact that "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* (quotation marks and citations omitted); *see also Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. Super. 2006) (concern for officer safety so serious that it "outweighs the minor intrusion on . . . drivers and passengers whose freedom of movement had already been curtailed by the traffic stop") (citation and emphasis omitted).

During a lawful traffic stop, police may order the driver and passengers to exit the vehicle until the stop is completed. *See Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2014); *see also Commonwealth v. Pratt*, 930 A.2d 561, 567-68 (Pa. Super. 2007) ("allowing police officers to control all movement in a traffic encounter . . . is a reasonable and justifiable step towards protecting their safety"). Further, officers may ask detainees a "moderate number of questions" to determine identity and any other

information to confirm or dispel the officer's suspicions. *See Spence*, 290 A.3d at 314 (citation omitted). To that end, and for officer safety, police are permitted to ask occupants whether they have a weapon or anything concerning as a matter of course during the traffic stop. *See Clinton*, 905 A.2d at 1031. In order to validate a frisk, a police officer must be "able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." *Commonwealth v. Cunningham*, 287 A.3d 1, 10 (Pa. Super. 2022) (citation and quotation marks omitted). In determining whether the police officer had a sufficient articulable basis, we consider the totality of the circumstances. *See id.*

Instantly, the trial court addressed Prentice's claim as follows:

[Prentice] does not contest the legitimacy of the traffic stop. Officer McCarthy conducted an inquiry of the driver, who provided all information as requested and informed [Officer McCarthy] that he was a licensed firearm carrier in possession of a gun at the time of the stop. The driver further complied, without incident, when asked to alight from his vehicle. Because [Prentice was] a passenger in the vehicle, police may also request he exit the car. However, during the stop, Officer McCarthy observed [Prentice] demonstrate the following conduct: changing his behavior when the word "firearm" was mentioned and the attempt to keep his waistband concealed by leaning forward while seated in the vehicle and when exiting the car. These actions gave rise to reasonable suspicion [] leading [] Officer [McCarthy] to [order Prentice to exit the vehicle and] escort . . . [Prentice] up out of the vehicle. Officer McCarthy then immediately touched the front of his waistband and identified a firearm. This frisk of [Prentice]'s waistband is justified and permissible given [Prentice]'s suspicious behavior[, specifically the] attempts [to conceal his waistband,] and officer safety.

* * *

[Prentice] did more than merely possess the firearm – Officer McCarthy also recognized [Prentice] from prior contacts and knew him as an individual who [could not lawfully possess a firearm.]

Trial Court Opinion, 12/13/23, at 5-6 (citations and quotations omitted).

Upon review, we conclude that the trial court's factual determinations are supported by the record[6] and that its legal conclusions are sound. **See Jones**, **supra**. We note, and Prentice concedes, that Officer McCarthy effectuated a lawful vehicle stop based upon probable cause where the driver failed to use a turn signal. Further, as discussed by the trial court, Officer McCarthy knew Prentice from prior interactions. **See** N.T. Non-Jury Trial, 4/26/23, at 33-34, 41-43, 45 (Officer McCarthy testifying he knew, from prior encounters, that Prentice was: (1) argumentative; (2) resistant to police commands; (3) had previously fled from police; and (4) was person not to possess firearms). On this occasion, Officer McCarthy observed Prentice leaning forward in a way "consistent with [attempts] to conceal a firearm [in his waistband.]" **See id.** at 45. Additionally, the instant encounter occurred

---

[6] To the extent that Prentice challenges the trial court's determinations that Prentice was concealing the firearm in his waistband, these are challenges to the trial court's factual determinations, not its legal conclusions. **See Jones**, **supra**; **see also In re L.J.**, 79 A.3d 1073, 1085 (Pa. 2013) ("appellate courts do not [] comb through the record to find evidence favorable to a particular ruling[, r]ather appellate courts look to the specific findings of facts made by the suppression court"); **Commonwealth v. Smith**, 808 A.2d 215, 220 (Pa. Super. 2002) ("If there is sufficient evidence of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge."). The record supports the trial court's determinations that Prentice was leaning forward to conceal his waistband and, thus, we may not disturb those conclusions. **See Smith**, **supra**; **Jones**, **supra**.

at night[7] and Prentice did not comply with multiple police orders to exit the vehicle. *See id.* at 31-32; *see also Commonwealth v. Buchert*, 68 A.3d 911, 916-17 (Pa. Super. 2013) (combination of defendant's leaning forward and appearing to conceal something, along with extreme nervousness and night time stop, sufficient to warrant protective frisk). Consequently, we conclude that, based upon the totality of the circumstances, the police had a sufficient articulable basis to frisk Prentice. *See Cunningham*, *supra*. Accordingly, Prentice is afforded no relief on his claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  1/08/2025

---

[7] The time of night has long been a factor recognized by the courts of this Commonwealth in contributing to a heightened concern for officer safety. *See In re O.J.*, 958 A.2d 561, 566 (Pa. Super. 2008) (protective search justified in part because vehicle stop occurred at night "which creates a heightened danger that an officer will not be able to view a suspect reaching for a weapon"); *Commonwealth v. Simmons*, 17 A.3d 399, 401 (Pa. Super. 2011) (reasonable suspicion existed for protective sweep where traffic stop took place at night in high-drug and high-crime area, and officer saw defendant make movements consistent with concealing weapons). We observe that the trial court did not expressly rely upon the time of night in denying Prentice's suppression motion; however, we may affirm on any basis. *See Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis.").